UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| RICARDO CULPEPPER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. 4:15 CV 834SNLJ (ACL) |
| JENNIFER SACHSE,[1] | ) | |
| | ) | |
| Respondent. | ) | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on the Petition of Ricardo Culpepper for a Writ of Habeas

Corpus under 28 U.S.C. § 2254.   This cause was referred to the undersigned United States

Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b).

**I.  Procedural History**

Culpepper is incarcerated at the Missouri Eastern Correctional Center in Pacific, Missouri,

pursuant to the Sentence and Judgment of the Circuit Court of St. Louis City, Missouri.   (Doc. 21

at 40-43.)

On November 2, 2011, a jury found Culpepper guilty of second-degree domestic assault,

deviate sexual assault, and third-degree domestic assault.   *Id.* at 36-38.   The court sentenced him

to concurrent terms of fifteen years imprisonment for the second-degree domestic assault, five

---

[1]Culpepper is currently incarcerated at the Missouri Eastern Correctional Center in Pacific, Missouri.   Because Jennifer Sachse, Superintendent of Missouri Eastern Correctional Center, is Petitioner's custodian, Jennifer Sachse will be substituted for Ian Wallace as the proper party respondent in this cause.   28 U.S.C. § 2254(a).

years for the deviate sexual assault, and one year for the third-degree domestic assault.  *Id.* at 40-43.

In his direct appeal of his convictions, Culpepper first argued that the trial court erred in overruling his motion for judgment of acquittal because there was insufficient evidence to support the charge of second-degree domestic assault.  He next argued that the trial court erred in overruling his motion for mistrial because members of the jury may have heard a sidebar conversation that was prejudicial to him.  (Doc. 18-1.)  On September 3, 2013, the Missouri Court of Appeals affirmed the judgment of the trial court.  (Doc. 18-3.)

Culpepper filed a *pro se* motion for post-conviction relief under Rule 29.15.  (Doc. 22 at 4-20.)  After appointment of counsel, an amended post-conviction relief motion and request for evidentiary hearing was filed.  *Id.* at 28-44.  The amended motion raised the following ineffective assistance of counsel claims: (1) trial counsel failed to establish the timeline of the conduct relevant to the deviate sexual assault count; and (2) trial counsel gave him unreasonable advice to induce him not to testify at his trial.  *Id.*  The motion court denied Culpepper's amended motion and his request for an evidentiary hearing.  *Id.* at 45-52.

In his appeal from the denial of post-conviction relief, Culpepper argued that trial counsel was ineffective in agreeing with the State not to play taped jail conversations between Culpepper and the victim which would have called into doubt the timing of the sexual contact relevant to the deviate sexual assault count.  (Doc. 18-4.)  The Missouri Court of Appeals affirmed the decision of the motion court.  (Doc. 18-6.)

Culpepper filed the instant Petition on May 26, 2015, in which he raises 26 grounds for relief.  (Doc. 1.)  He raised the first three claims in the state court proceedings.  The remaining 23 grounds for relief are ineffective assistance of counsel claims not previously raised in any court. Culpepper also requests an evidentiary hearing on his claims.

2

On October 2, 2015, Respondent filed a Response to Order to Show Cause.   (Doc. 18.) Respondent argues that Grounds 4 through 26 are procedurally defaulted, and all of Culpepper's claims fail on their merits.   Respondent opposes Culpepper's motion for an evidentiary hearing. (Doc. 29.)

Culpepper has filed a Traverse, in which he provides further argument in support of his claims.   (Doc. 34.)

## II.   Facts[2]

Culpepper met D.S. while he was a patient and she was an employee at Barnes Hospital. They began dating, but eventually ended their relationship.   Culpepper and D.S. were still living together on Oakland Avenue in St. Louis, MO, on October 13, 2009.   On that morning, between approximately 5:00 a.m. and 6:00 a.m, Culpepper woke D.S. while searching for something in the house.   Culpepper became agitated and accused D.S. of having sex with another man the night before.   Culpepper then began to hit D.S. on the face, arms, legs, and stomach with a belt. Culpepper demanded that D.S. call the man he accused her of having sex with.   D.S. pretended to make the phone call so Culpepper would stop beating her by calling a disconnected number and telling Culpepper that no one answered.

Culpepper continued to hit D.S. with the belt and began to pull her pants down claiming that he knew what sex smelled like.   Culpepper then penetrated her vagina with his finger.   The struggle continued, with Culpepper pouring alcohol on D.S.'s wounds and ripping hair from her scalp.   Culpepper then took her car and left, at which point D.S. called the police, got dressed, and ran from the house.   D.S. estimated that she had been struck by Culpepper over fifty times.

---

[2]   The Court's recitation of the facts is taken form the decision of the Missouri Court of Appeals on direct appeal.   (Doc. 18-3 at 4-5.)

### III.   Standard of Review

A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. §

2254(d), which provides:

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court construed Section 2254(d) in *Williams v. Taylor*, 529 U.S. 362

(2000).   With respect to the "contrary to" language, a majority of the Court held that a state court

decision is contrary to clearly established federal law "if the state court arrives at a conclusion

opposite to that reached by [the Supreme Court] on a question of law" or if the state court

"decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Id.*

at 405.   Under the "unreasonable application" prong of § 2254(d)(1), a writ may issue if "the

state court identifies the correct governing legal rule from [the Supreme Court's] cases but

unreasonably applies [the principle] to the facts of the particular state prisoner's case." *Id.*

Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether

the state court's application of clearly established federal law was objectively unreasonable." *Id.*

at 410.   Although the Court failed to specifically define "objectively unreasonable," it observed

that "an unreasonable application of federal law is different from an incorrect application of

federal law." *Id.* at 410.

4

### IV.    Claims Raised in State Court

Culpepper raised the claims contained in Grounds 1, 2, and 3 in the state court proceedings.

### 1.    Ground 1

In his first ground for relief, Culpepper argues that the trial court erred in overruling his motion for a judgment of acquittal because the State failed to prove that the belt he used to beat the victim was a "dangerous instrument" as required to support a conviction for second-degree assault.   Culpepper raised this claim in his direct appeal.

When reviewing a claim challenging the sufficiency of the evidence, "the relevant question is whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."   *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).   "Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution."   *Id.* (emphasis in original).   When applying this standard, the scope of review is extremely limited.   A reviewing court "must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and [it] must defer to that resolution."   *Whitehead v. Dormire*, 340 F.3d 532, 536 (8th Cir. 2003) (internal quotations marks and citations omitted).

"A person commits the crime of assault in the second degree if he ... [a]ttempts to cause or knowingly causes physical injury to another person by means of a deadly weapon or dangerous instrument[.]"   Mo. Rev. Stat. § 565.060.1(2) (2000).   "Dangerous instrument" is defined as "any instrument, article or substance, which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury."   *Id.* at § 556.061(9).   "Serious

physical injury" is defined as a "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body." *Id.* at § 556.061(28).

On direct appeal, the Missouri Court of Appeals held as follows:

> In the instant case, the State presented sufficient evidence from which a reasonable juror could determine that the belt Appellant used to strike D.S. was an instrument capable of causing serious physical injury.   In determining whether a particular object is a dangerous instrument, we must look to its use under the circumstances.   *State v. Williams*, 126 S.W.3d 377, 384 (Mo. banc 2004); *State v. Terrell*, 751 S.W.2d 394, 395 (Mo. App. E.D. 1988).   Here, Appellant knowingly used the belt under circumstances capable of causing serious physical injury to D.S. A belt ordinarily is a harmless object, but when a belt buckle is used as a whip to hit D.S. fifty times on the face and torso, it becomes a dangerous instrument capable of causing serious physical injury.   "[W]hether or not the victim suffered serious physical injury is irrelevant."   *Terrell*, 751 S.W.2d at 395.   What matters is whether the finder of fact believes beyond a reasonable doubt that under the circumstances in which it was used, the instrument *could* have caused serious physical injury.   Here, it was reasonable for the jury to determine that the belt was a dangerous instrument capable of causing serious physical injury.

(Doc. 18-3 at 7-8.)

A state appellate court's conclusion that the evidence was sufficient to support a criminal conviction is entitled to great deference by a federal court.   *Jackson*, 443 U.S. at 323. "[W]hether the record contains sufficient evidence to establish each element of the crime beyond a reasonable doubt 'is everyday business for the state courts, grist for their mill, and it will be a rare case in which a federal court on habeas will disagree with them.'"   *Cassell v. Lockhart*, 886 F.2d 178, 179 (8th Cir. 1989) (quoting *Moeller v. Attorney Gen. of S.D.*, 838 F.2d 309, 310 (8th Cir. 1988)).

The determination of the Missouri Court of Appeals that there was sufficient evidence to support Culpepper's conviction for second-degree assault is supported by the record and entitled

to deference.   Culpepper's use of a belt to strike D.S. fifty times was capable of causing serious physical injury.   The state court's decision is not contrary to or an unreasonable application of clearly established law, nor is it an unreasonable determination of the facts.

Accordingly, the undersigned recommends that Ground 1 be denied.

**2.      Ground 2**

In his second ground for relief, Culpepper argues that the trial court erred in refusing to grant a mistrial based on the possibility that the jury overheard the court and counsel discuss, during a sidebar, the subject of child abuse.   Culpepper raised this claim in his direct appeal.

On the second day of the trial, Juror 609 asked to approach the bench with a question. (Doc. 20 at 193.)   Juror 609 stated as follows, at sidebar:

> Normally every morning I wake up, turn on the TV news, catch the weather and stuff.   This morning there was a story about a 9-year-old being beaten by a mother with a bat, bruised and all this and that, and they said she most likely will not serve anything or this or that.   I'm just wondering if you guys think that that's because I believe it interfered with my way of thinking.

*Id.* at 193-94.   Upon questioning by the court, Juror 609 clarified that the case discussed on the news had nothing to do with the case before the court.   *Id.* at 194-95.   Defense counsel moved to strike Juror 609 due to the concerns he had expressed regarding the lack of punishment in the case featured on the news.   *Id.* at 196.   The State opposed the motion.   *Id.*   The court admonished Juror 609 not to talk to the other jurors, and indicated he would take up defense counsel's motion at the first break.   *Id.* at 108.

After returning to counsel table, defense counsel asked to re-approach.   *Id.* at 198. Defense counsel expressed concern because, once he returned to counsel table, Culpepper asked him who the juror was talking about having beaten a child.   *Id.*   Defense counsel then moved for

a mistrial, arguing that it was possible the jurors heard the remarks. *Id.* at 199. The court

overruled the motion for mistrial, stating:

> I don't think they did. Anyway, it's just a fragment of anything,
> it's not about this case. There's no allegation anybody beat a kid
> here, so, fine. The motion is made, it's preserved, it's overruled.
> We're going to continue and get this thing cooking.

*Id.*

After hearing testimony from two witnesses, the court removed Juror 609 and replaced

him with an alternate. *Id.* at 226. The court explained that, based on Juror 609's remarks, the

court was "not confident he's still giving the presumption of innocence to the defendant." *Id.*

In his direct appeal, Culpepper argued that the trial court abused its discretion in

overruling defense counsel's motion for mistrial because the jury could have heard the sidebar

conversation and inferred that Culpepper had been accused of child abuse. The Missouri Court

of Appeals held as follows, in relevant part:

> Appellant's argument that the bench conference essentially
> posed the same prejudice that would have resulted had evidence of
> uncharged crimes been admitted is without merit. The most
> obvious reason that Appellant's analogy fails is that the bench
> conference was outside the hearing of the jury and was not
> admitted into evidence. Appellant has not provided objective
> proof that the jury did in fact overhear the sidebar conversation.
> In denying Appellant's motion for a new trial, the trial court
> remarked that it did not believe that the jury had heard the
> conversation. The trial court is in a better position to determine
> what, if anything, was heard and what prejudicial effect, if any, it
> may have had on the jury. *State v. McGowan*, 184 S.W.3d 607,
> 610 (Mo. App. E.D. 2006). Thus, this court gives deference to the
> trial court's determination. Absent proof, Appellant's argument is
> speculative and therefore insufficient to show prejudice. Even
> assuming the jury did hear the sidebar conversation, they also
> would have heard that the matter being discussed was unrelated to
> Appellant's case and involved a mother. Moreover, we note the
> evidence at trial was sufficient to support the verdict and the
> sidebar conversation would not have been outcome-determinative.

(Doc. 18-3 at 10.)

The appellate court's determination that the trial court did not abuse its discretion in overruling defense counsel's request for a mistrial was not contrary to or an unreasonable application of clearly established federal law, nor was it an unreasonable determination of the facts.   Federal courts on habeas review "will reverse a state court evidentiary ruling only if the petitioner shows that the alleged improprieties were so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair."   *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995) (internal quotations omitted).   "To carry that burden, the petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial—i.e., that absent the alleged impropriety the verdict probably would have been different."   *Id.* (internal quotations omitted).

Culpepper has not shown a reasonable probability that Juror 609's statements affected the outcome of the trial.   The trial court did not believe the jury heard the remarks.   As the Missouri Court of Appeals noted, if the jurors were able to hear the exchange, the jurors would know that the statements did not pertain to Culpepper.

Thus, the undersigned recommends that Ground Two be denied.

### 3.    Ground 3

In his third ground for relief, Culpepper argues that trial counsel was ineffective in agreeing with the State not to play recorded telephone conversations between Culpepper and the victim, because these calls show that Culpepper touched the victim's vagina before he beat her with a belt.   Culpepper claims that this sequence of events is inconsistent with the victim's trial testimony.

Culpepper raised this claim in the post-conviction proceedings.   He argued that the recorded conversations would have shown that the sexual contact was consensual.   The Missouri Court of Appeals held:

The motion court found this claim was without merit.   It noted it was apparent that the parties agreed none of the taped conversations would be played and defense counsel did not want to open the door to the prosecutor playing other portions of the conversations.   Further, the motion court stated it did not believe that any comment by the victim during the conversations regarding the timing of the beating would have changed the outcome of the trial.

The record does not support Movant's allegation that his counsel had not listened to the recordings.   Instead, the record supports the presumption that counsel's agreement with the prosecutor was a strategic decision.   This presumption is supported by the fact that defense counsel limited his cross-examination of the victim to the question of whether she had contact with Movant after the incident.   Defense counsel did not mention the recordings in his cross-examination because he did not want to open the door and allow the State to introduce the tapes.

We note that reasonable choices of trial strategy, no matter how ill-fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance.   Anderson v. State, 196 S.W.3d 28, 33 (Mo. banc 2006).   Strategic choices made after a thorough investigation of the law and the facts relevant to plausible opinions are virtually unchallengeable.   Id.   Where counsel has investigated possible strategies, courts should rarely second-guess counsel's actual choices.   Id.   It is not ineffective assistance of counsel to pursue one reasonable trial strategy to the exclusion of another reasonable trial strategy.   Id.

Further, we note while Movant contends his counsel should have introduced the tapes because they would have impeached the victim's testimony about the sequence of events during the incident, this would be an insufficient basis on which to grant post-conviction relief.   The mere failure to impeach a witness does not entitle a movant to post-conviction relief.   Craig v. State, 410 S.W.3d 728, 733 (Mo. App. W.D. 2013).   For relief, it is necessary for the movant to show that impeachment would have provided a viable defense.   Id.   Here, even if the victim's testimony would have been impeached, Movant would not have had a viable defense.   Movant failed to plead facts showing the sexual touching of the victim was consensual.   Moreover, even if the sexual touching occurred before the physical attack, a reasonable jury could still conclude that the sexual touching was performed in order to terrorize the victim.

(Doc. 18-6 at 5-6.)

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  To show ineffective assistance of counsel, a habeas petitioner must show both that "[his] counsel's performance was deficient" and that "the deficient performance prejudiced [his] defense." *Id.* at 687; *see also Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014).  To show deficient performance, the petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.  "Judicial scrutiny of counsel's performance must be highly deferential," and Petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy." *Id.* at 689 (citations omitted).  To show prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

When, as here, an ineffective assistance claim has been addressed by the state court, this Court must bear in mind that "[t]aken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *See Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (citation omitted).  In the context of a habeas claim, it is not sufficient for a petitioner to "show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance." *Bell v. Cone*, 535 U.S. 685, 698-99 (2002).  "Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699.

Here, the state appellate court properly applied *Strickland*.  The Missouri Court of Appeals found that defense counsel's decision not to play the recorded telephone calls was one of

11

reasonable trial strategy, in that counsel did not want to open the door to the prosecutor playing other portions of the calls.   Further, Culpepper is unable to demonstrate prejudice.   The fact that the sexual contact occurred before the physical attack would not have provided a defense, as it would not show that the contact was consensual.

Accordingly, the undersigned recommends that Ground 3 be denied.

## VI.    Procedurally Defaulted Claims

Respondent argues that Grounds 4 through 26 are procedurally defaulted because Culpepper did not raise them in state court.

To avoid defaulting on a claim, a petitioner seeking federal habeas review must have fairly presented the substance of the claim to the state courts, thereby affording the state courts a fair opportunity to apply controlling legal principles to the facts bearing on the claim.   *Wemark v. Iowa*, 322 F.3d 1018, 1020−21 (8th Cir. 2003) (internal quotation marks and citations omitted) (quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) and *Anderson v. Groose*, 106 F.3d 242, 245 (8th Cir. 1997)).   Specifically, a state prisoner must fairly present each of his claims in each appropriate state court before seeking federal habeas review of the claim. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).   A claim has been fairly presented when a petitioner has properly raised the same factual grounds and legal theories in the state courts that he is attempting to raise in his federal petition.   *Wemark*, 322 F.3d at 1021 (internal quotation marks omitted) (quoting *Joubert v. Hopkins*, 75 F.3d 1232, 1240 (8th Cir. 1996)).   Claims that are not fairly presented to the state courts are procedurally defaulted.   *See id.* at 1022.

In cases of procedural default, federal courts are barred from reaching the merits of the defaulted ground absent a showing of both 'cause' and 'actual prejudice' resulting from the alleged constitutional violations.   *See Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).   A petitioner must "show that some objective factor external to the defense impeded counsel [or petitioner's]

12

efforts to comply with the State's procedural rule" in order to show "cause" for procedural default. *Murray v. Carrier,* 477 U.S. 478, 488 (1986). "Cause" can be demonstrated by either "a showing that the factual or legal basis for a claim was not reasonably available to counsel" or by a showing that interference by officials made compliance impracticable. *Id.* If a petitioner cannot show 'cause' for the procedural default, then the court need not determine whether actual prejudice has resulted. *See Leggins v. Lockhart,* 822 F.2d 764, 768 (8th Cir. 1987).

To invoke the alternative miscarriage of justice exception to the procedural default rule, a petitioner must present new evidence affirmatively demonstrating that he is innocent of the crime for which he was convicted. *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006). "'Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.'" *Cagle v. Norris*, 474 F.3d 1090,1099 (8th Cir. 2007) (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)).

In this case, Culpepper did not raise the claims contained in Grounds 4 through 26 in the state court proceedings and has, therefore, defaulted these claims. Culpepper argues that his procedural default can be excused by the alleged ineffective assistance of post-conviction counsel under *Martinez v. Ryan*, 566 U.S. 1 (2012).

In *Martinez*, the United States Supreme Court held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 132 S. Ct. at 1315. To meet this narrow exception for establishing cause, Culpepper must demonstrate that post-conviction counsel was ineffective under the standards of *Strickland.* Therefore, "[t]o overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit."

13

*Id.* at 1318.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).   To prevail on a claim of ineffective assistance of counsel, a petitioner must show that 1) his counsel's performance was deficient, and 2) the deficient performance prejudiced his defense.  *Id.* at 687.   In evaluating counsel's performance, the basic inquiry is "whether counsel's assistance was reasonable considering all the circumstances."  *Id.* at 688.   The petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.   To establish prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.

The Court will examine Culpepper's underlying ineffective assistance of trial counsel claims to determine if they have "some merit."

**Grounds 4 and 6**

In Ground 4, Culpepper argues that trial counsel was ineffective in failing to object on grounds of double jeopardy when the jury convicted him of "both the initial offense and the two lesser included offenses."  (Doc. 1 at 11.)

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. amend V. "The Double Jeopardy Clause 'protects against a second prosecution for the same offense after acquittal.   It protects against a second prosecution for the same offense after conviction.   And it protects against multiple punishments for the same offense.'"  *Brown v. Ohio,* 432 U.S. 161, 165 (1977) (quoting *North Carolina v. Pearce,* 395 U.S. 711, 719 (1969)).

Culpepper was convicted of second-degree domestic assault for beating the victim with a belt; deviate sexual assault for forcing his finger into the victim's vagina; and third-degree domestic assault for tearing her hair from her scalp.   Because the factual basis for each charge arose from separate acts, Culpepper's convictions do not violate double jeopardy.   Trial counsel was not ineffective in failing to make a meritless objection.

In Ground 6, Culpepper argues that trial counsel was ineffective in failing to object when the trial court submitted "identical" jury instructions for the second-degree domestic assault charge and the third-degree assault charge.   The record belies this claim.   As discussed above, the three charges were based on different facts.   The jury instructions reflected these different facts.   (Doc. 21 at 28-30.)   Counsel was not ineffective in failing to make a meritless objection.

**Grounds 5 and 23**

Grounds 5 and 23 challenge the State's use of allegedly perjured testimony.   Culpepper argues in Ground 5 that trial counsel was ineffective for failing to object to this allegedly perjured testimony at trial.   In Ground 23, he contends that trial counsel was ineffective for failing to use recorded telephone calls between the victim and Culpepper's mother to prove the State's knowing use of perjured testimony.

The allegedly perjured testimony is the victim's testimony at trial that Culpepper "hit her first and then touched her private area."   (Doc. 1 at 11.)   Culpepper claims that this testimony was inconsistent with the victim's statements in her deposition and in the recorded telephone calls, where she indicated that the beating had occurred after the sexual assault.

The existence of contradictions between the testimony of different witnesses (or between trial testimony and prior statements) is not sufficient to show that the trial testimony is perjured. *United States v. Peterson,* 223 F.3d 756, 763 (8th Cir. 2000); *United States v. Jordan,* 150 F.3d

15

895, 900 (8th Cir. 1998).   The inconsistent statements Culpepper challenges do not constitute perjury.   Trial counsel was not, therefore, ineffective as alleged in Grounds 5 or 23.

### Ground 7

In Ground 7, Culpepper argues that trial counsel was ineffective for failing to question the victim "about what type of belt was used with regards to material, make and model, which would have shown the jury that Petitioner was not attempting to cause harm or physical injury to the victim."   (Doc. 1 at 12.)   The evidence presented at trial revealed that Culpepper struck the victim over fifty times with the belt.   Photographs taken on the day of the assault showed welts and bruising on the victim's face, arms, legs, and stomach.   In light of this evidence, Culpepper's claim that counsel was ineffective in failing to question the victim about the type of belt used lacks merit.

### Ground 8

In his eighth ground for relief, Culpepper argues that trial counsel was ineffective for failing to raise the claim in his motion for a new trial that the trial court erred in allowing the State to strike venire persons 21, 503, 832, 260, and 1008.   Culpepper claims that these venire persons demonstrated their impartiality but were excluded due to their experiences with sexual assault or domestic violence; or due to their relationships with counsel.   Culpepper fails to show that any of the strikes at issue were improper.   His claim that counsel was ineffective for failing to raise this claim lacks merit.

### Grounds 9-14, 16-19, and 22

Culpepper argues that trial counsel was ineffective based on his failure to investigate or present as evidence prior inconsistent statements of the victim.   Specifically, Culpepper claims

16

counsel was ineffective on the following bases: failing to investigate and present evidence of recorded telephone conversations showing that the victim consented to Culpepper touching her vagina (Grounds 9 and 18); stipulating to the exclusion of the recorded telephone calls between Culpepper and the victim (Grounds 10 and 16); failing to investigate and admit recorded calls and deposition testimony indicating the victim opened her own pants (Ground 11); failing to investigate and admit evidence that the victim called Culpepper's previous attorney to admit consenting to the sexual contact (Ground 12); failing to subpoena Culpepper's former attorney to testify about statements by the victim acknowledging consent to the sexual contact (Ground 13); falsely telling Culpepper that he had listened to the victim's statements on the recorded calls and they were not helpful to his case (Ground 14); failing to investigate and admit the victim's statements to Culpepper's former attorney and on the recorded calls showing that the victim consented to the sexual contact (Ground 17); failing to investigate and admit evidence of the victim's statements during recorded calls showing that she told Culpepper's mother that she consented to the sexual contact (Ground 18); failing to investigate and admit recorded calls to show that Culpepper put his finger in the victim's vagina for the purpose of determining whether she had had sex and not to terrorize her as required to support a deviate sexual assault conviction (Ground 19); and failing to admit the recorded call between Culpepper and the victim on the day of Culpepper's indictment as proof that the victim lied (Ground 22).

As previously discussed regarding Culpepper's third ground for relief, the Missouri Court of Appeals found that trial counsel's decision not to play the recorded telephone calls was one of reasonable trial strategy, in that counsel did not want to open the door to the prosecutor playing other portions of the calls.   (Doc. 18-6 at 5-6.)   Culpepper is unable to show that trial counsel was constitutionally deficient in failing to play the recorded telephone calls between the victim and Culpepper.

As to the statements the victim allegedly made to Culpepper's former attorney, subpoenaing such testimony would result in the waiver of attorney-client privilege, and the risk of opening the door to information harmful to Culpepper.   Culpepper has not shown trial counsel was ineffective in failing to subpoena his former attorney.

**Ground 15**

In his fifteenth ground for relief, Culpepper argues that he and his trial counsel had a conflict of interest because counsel became irate when Culpepper expressed his desire to testify and thereby prevented him from testifying in his own defense.

The record refutes Culpepper's claim.   The trial court informed Culpepper of his right to testify, including that it was his decision only, and that no one could coerce him to testify or not to testify.   (Doc. 20 at 236.)   The court advised Culpepper that the State could confront him with his prior criminal record, including an involuntary manslaughter conviction.   *Id.* at 236. Culpepper testified that he had decided not to testify after consulting with his attorney and his family, and that no one had forced him to do this.   *Id* at 237-38.   Thus, Culpepper's claim that trial counsel prevented him from testifying, which resulted in a conflict of interest, lacks merit.

**Ground 20**

In Ground 20, Culpepper argues that trial counsel was ineffective in failing to "strike and disqualify" the trial judge assigned to his case due to the judge's reputation for imposing harsh sentences on repeat offenders.   (Doc. 1 at 24.)   The trial judge's reputation for harsh sentences is not grounds for recusal.   Trial counsel was not ineffective in failing to raise a meritless claim.

**Ground 24**

In Ground 24, Culpepper argues that trial counsel was ineffective for allowing the prosecutor to argue that Culpepper "sweet talked the victim" as Culpepper believe the "victim sweet talked and isolated [him]."   (Doc. 1 at 27.)   Culpepper fails to identify on what ground

18

that statement by the prosecutor was objectionable.   Consequently, this claim lacks merit.

**Ground 25**

In Ground 25, Culpepper argues that trial counsel was ineffective for failing to know the deviate sexual assault statute had been revised to include the language "for purpose of terrorizing."   (Doc. 1 at 28.)

Culpepper cites to the hearing on defense counsel's motion for judgment of acquittal at the course of the States' case, in which defense counsel argued the State had not made a submissible case of deviate sexual assault because there was no evidence of "sexual arousal or gratification."   (Doc. 20 at 233-34.)   The prosecutor argued that the statute had changed in 2006 to read sexual contact "for the sexual gratification *or for terrorizing the victim*."   *Id.* at 234.

Culpepper is unable to demonstrate prejudice resulting from trial counsel's lack of awareness regarding the changes in the statutory language in light of the evidence presented against him at trial.   The victim testified that the sexual contact occurred after Culpepper struck her with his belt over fifty times due to his belief that she had had sexual intercourse with someone else.   The result of the trial would not have been different had trial counsel learned about the changes in the statutory language earlier.

**Ground 26**

Culpepper argues that trial counsel was ineffective in calling him a "K-9" at trial. Culpepper does not provide a citation to the transcript, and the Court was unable to find such a reference.   Even assuming trial counsel used this language, Culpepper is unable to demonstrate prejudice in light of the evidence presented at trial of his guilt.

Having found that the underlying ineffective assistance of trial counsel claims in the Petition are not "substantial" and do not have "some merit" as required by *Martinez,* Culpepper has not established cause to avoid the procedural bar preventing consideration of the merits of

these claims.   Because no cause has been established for these claims, the undersigned will not consider whether Culpepper has demonstrated prejudice with respect to them.

Culpepper's motion for evidentiary hearing will also be denied.   *See* Rule 8 of the Rules Governing Section 2254 Cases.   Under 28 U.S.C. § 2254(e)(2), "if the applicant has failed to develop the factual basis of a claim in State court proceedings," a federal district court shall not grant an evidentiary hearing unless "the applicant shows that the claim relies on a factual predicate that could not have been previously discovered through the exercise of due diligence; and [ ] the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."   An evidentiary hearing is not necessary when the merits of the petitioner's claims may be resolved based on the state court record.   *McCann v. Armontrout,* 973 F.2d 655, 658-59 (8th Cir. 1992).

At this stage of the litigation, it appears that the state court record contains sufficient facts to make an informed decision on the merits of Culpepper's claims.   Because his claims do not require further factual development and may be adequately resolved on the record, an evidentiary hearing is not necessary.   For that reason, his motion for evidentiary hearing will be denied.

## VI.    Certificate of Appealability

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right.   *See* 28 U.S.C. § 2253(c)(2); *Hunter v. Bowersox*, 172 F.3d 1016, 1020 (8th Cir. 1999).   A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings.   *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997).   In this case, Culpepper has failed to make a substantial showing of the denial of a constitutional right.   The undersigned is not persuaded that the issues raised in his Petition are debatable among reasonable

jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, the undersigned recommends that no Certificate of Appealability be issued.

## <u>RECOMMENDATION</u>

**IT IS HEREBY RECOMMENDED** that the Petition of Ricardo Culpepper for a Writ of Habeas Corpus under 28 U.S.C. § 2254 be **denied**.

**IT IS FURTHER RECOMMENDED** that no Certificate of Appealability be issued.

The parties are advised they have until June 7, 2018 to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636 (b) (1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.   *See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990).


/s/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 24th day of May, 2018.